IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROSINA RAMIREZ,

    Plaintiff,

vs.                                             No.Civ. 97-519 WWD/RLP

CITY OF FARMINGTON, CITY OF FARMINGTON
POLICE DEPARTMENT; OFFICER SHAWN H. SCOTT,
individually and as a police officer for the City of Farmington;
OFFICER RON ANDERSON, individually and as a police
officer for City of Farmington; JOHN DOES and JANE ROES,
unknown police officers for the City of Farmington,

    Defendants.

## **MEMORANDUM OPINION AND ORDER**

    THIS MATTER comes before the court upon defendants' Motion for Summary Judgment, filed January 16, 1998 [27-1]. In this action under 42 U.S.C. § 1983, plaintiff alleges that defendants violated her constitutional rights by improperly arresting her for driving under the influence of an intoxicating liquor or drug and detaining her without probable cause.

### **Background**

    A review of the pleadings reveals a woman beset with various mental and physical ailments, including bipolar disorder for which she is prescribed lithium, cancer of the ovaries, blindness in one eye, and brain damage from an automobile accident years ago which resulted in a permanent loss of coordination.

    On August 31, 1996, Ms. Ramirez was stopped by Officers Scott and Anderson for driving under the influence. Earlier that day, her husband had been incarcerated for driving while intoxicated. That same day, she experienced a panic attack and had visited church with a friend. Before leaving her

home again later in the evening, plaintiff consumed half a beer and took her lithium dose. She states she was "still crying" when she was stopped by defendants. Ms. Ramirez informed the officers that she was handicapped and had consumed some beer and was taking lithium. After she failed the five sobriety tests which defendant Scott administered, plaintiff was arrested for driving while intoxicated, driving without a license or insurance and failing to signal a turn.

At the Farmington holding facility, plaintiff agreed to a breath test after being read the implied consent advisory. The results were .02 and .02.[1] She states that defendants then "engaged in a bout of cynical joking" when they then asked her if she wanted a blood test. Ms. Ramirez refused. She states that she changed her mind afterward and requested a blood test, but Officer Scott refused to administer one. While defendants' affidavits state that plaintiff refused the blood test and does not mention whether she subsequently changed her mind, neither of them deny that she did.

In any case, plaintiff was then charged with aggravated driving, pursuant to N.M.Stat.Ann.§ 66-8-107(3), based on her refusal to submit to chemical testing. Plaintiff states that she was detained over the holiday weekend and that the aggravated charge was dismissed. A copy of the order on the criminal complaint reflects this fact, but adjudges plaintiff to be "guilty." Resp. Ex. 1.[2]

Ms. Ramirez contends that the arrest was improper because the officers failed to adequately explain field sobriety tests which they performed on her, they lacked scientific, objectively obtained

---

[1] An alcohol concentration of .05 or less can be used as evidence of a presumption that the person was "not under the influence of intoxicating liquor." N.M.Stat.§ Ann. 66-8-110B(1).

[2] The basis for the conviction is not clear from the exhibit. At any rate, plaintiff's conviction raises the question of whether she may challenge its constitutionality in a suit for damages under 42 U.S.C. § 1983, if "establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction." Heck v. Humphrey, 114 S.Ct. 2364, 2369 (1994). My disposition in this case eliminates the need to require plaintiff to resubmit her complaint in the form of a habeas petition.

evidence to support the arrest and charge of aggravated DWI, and they failed to obtain a search warrant to administer a blood test in order to determine whether plaintiff was intoxicated. Defendants contend that they are entitled to qualified immunity in that they acted reasonably in arresting Ms. Ramirez.

## Discussion

**Standard**

Once the defendant has adequately raised the defense of qualified immunity, the plaintiff must show that the law was clearly established when the alleged violation occurred and come forward with facts or allegations sufficient to show that the official violated the clearly established law. Butler v. City of Norman, 992 F.2d 1053, 1054 (10th Cir. 1993). Then the defendant assumes the normal summary judgment burden of establishing that no material facts that would defeat his claim for qualified immunity remain in dispute. Dixon v. Richer, 922 F.2d 1456, 1460 (10th Cir.1991); Powell v. Mikulecky, 891 F.2d 1454, 1457 (10th Cir.1989); Woodward v. City of Worland, 977 F.2d 1392, 1396-97 (10th Cir.1992).

**Analysis**

As an initial matter, certain of plaintiff's claims should be dismissed *sua sponte*. The complaint alleges violations of the Fourth, Fifth and Fourteenth Amendments. There are no facts to support a claim against federal officials under the Fifth Amendment. See Public Utilities Comm'n v. Polak, 343 U.S. 451, 461 (1952). Also, due process challenges are subsumed within the protections afforded by the Fourth Amendment, thus the claim under the Fourteenth Amendment should also be dismissed. See Gerstein v. Pugh, 420 U.S. 103 (1975), cited in Gehl Grp. v. Koby, 63 F.3d 1528, 1538 (10th Cir. 1995). However, plaintiff was arrested without a warrant after she was stopped in her car by law enforcement officers and therefore she does allege a viable claim under the Fourth Amendment.

The constitutionality of a warrantless arrest is analyzed under the probable cause standard, which was clearly established at the time of the underlying incident. Romero v. Fay, 45 F.3d 1472, 1475 (10th Cir. 1995) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). Defendants Scott and Anderson are entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest Ms. Ramirez. Romero at 1476 (citing Hunter v. Bryant, 502 U.S. 224, 228 (1991)).

1. *Field Sobriety Tests*: Plaintiff first contends that the officers failed to adequately explain the field sobriety tests so that they were comprehensible. See Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995) (quoting Romero v. Fay, 45 F.3d 1472, 1475 (10th Cir. 1995) (plaintiff must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity). Both officers had received training in administering field sobriety tests, and defendant Anderson was a test instructor.

I have found no case law suggesting that defendants had a duty to explain the field sobriety tests or even that these tests need to be "explained."[3] Defendants are entitled to immunity with regard to the validity of the arrest because the law is not clearly established so that defendants would know that they were violating plaintiff's constitutional rights by not explaining the field sobriety tests. See Williams v. City of Denver et al., 99 F.3d 1009 (10th Cir. Colo. 1996) (in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains).

Even if defendants were not entitled to qualified immunity on that basis, a failure to explain the field sobriety tests still would not be overcome by the probable cause which existed for the arrest.

---

[3] The tests include counting backwards and turning on one leg. Mem., Ex. 5.

Upon approaching the vehicle and conversing with plaintiff, defendants noticed that plaintiff had the odor of alcohol on her breath, slurred speech and blood-shot eyes.[4] She was unsteady on her feet and swaying when she exited the car. Mem., Ex. 4.

Plaintiff also explained that she had had a tracheotomy and was handicapped. Mem., Ex. 5. These factors could indeed cause her to appear intoxicated and may even explain the results of her field sobriety tests, but they are immaterial to the issue of whether defendant's actions were in conformity with objective legal reasonableness, which is examined without regard to underlying intent or motivation. See Graham v. Connor, 490 U.S. 386, 396 (1989); See Williams v. Denver, 99 F.3d 1009, 1024 n.3 (10th Cir. 1996) (subjective intent of the officer irrelevant, as officer's conduct must be viewed objectively, without regard to his state of mind in determining whether a substantive constitutional violation has occurred). For the same reason, any taunting or mockery defendants allegedly engaged in simply does not enter into an analysis of whether defendant's conduct was objectively reasonable under the Fourth Amendment, even though such conduct may well be cognizable under a higher set of laws far beyond our jurisdiction.

What is important to a determination of whether defendants are entitled to qualified immunity is the objective legal reasonableness of their belief that Ms. Ramirez had committed a traffic violation and that probable cause existed for arresting her for driving under the influence of drugs or intoxicants. Based on plaintiff's statement to defendants that she had taken beer and lithium, on physical

---

[4] Plaintiff does not dispute the integrity of the initial stop, which occurred after she failed to signal a right turn into a vacant lot. Mem., Ex. 5; see U.S. v. McRae, 81 F.3d 1528, 1533 (10th Cir. 1996) (traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring).

observations of plaintiff's behavior, on the fact that she failed all five of the sobriety tests and that she had no driver's license nor proof of insurance, it is clear that there was probable cause to arrest Ms. Ramirez.

2. *Breath Test*:  Ms. Ramirez next contends that the "objective scientific data" (i.e., the breath test results, see Resp. at 3) were not sufficient objective evidence to support her arrest and subsequent charge with aggravated DWI.  As part of the New Mexico Motor Vehicle Code, implied consent to chemical tests is triggered when an officer has "reasonable grounds" to believe the person to have been [driving while intoxicated]. 66-8-107A,B; Matter of Suazo, 117 N.M. 785 (1994) (officer must have reasonable grounds to believe that motorist, arrested for any violation of Motor Vehicle Code, may be driving while under influence of intoxicating liquor before requesting that motorist submit to chemical test).  However, the results of plaintiff's breath test do not vitiate the probable cause which has already been established to exist for the initial arrest.[5]

Similarly, charging plaintiff with aggravated DWI has no relevance to whether defendants had probable cause to arrest her.  The inquiry into whether a seizure is valid ends once probable cause is found.  Cmp. Romero v. Fay, 45 F.3d 1472, 1480 (10th Cir. 1995) (once defendants concluded that initially discovered facts established probable cause, they were under no obligation to forego arresting plaintiff or release him merely because he said he was innocent.)

3. *Failure to obtain search warrant for blood test*:  Plaintiff's claim based on the failure to obtain a search warrant to take a blood test in order to determine intoxification also has no relevance to her Fourth Amendment claim, nor does it constitute a violation of civil rights.  The purpose of the statute

---

[5] Also, any presumptions connected to the breath test results are rebuttable, i.e., do not limit introduction of other evidence "concerning whether the person was under the influence of intoxicating liquor." N.M.Stat.Ann. 66-8-110(F).

requiring search warrants before a chemical test can be administered on a person who has refused is to protect that individual from unlawful searches.  N.M.Stat.Ann. § 66-8-111 (1978).  It does not create an independent right to a search warrant.  See McKay v. Davis, 99 N.M. 29, 30 (1982) (right granted by the Legislature is merely the right not to be forcibly tested after manifesting refusal).[6]  The source for protection against unreasonable search and seizure remains firmly ensconced within the Fourth Amendment, and in plaintiff's case, the seizure was appropriate and valid.

In sum, no material facts remain concerning the objective reasonableness of defendants' actions in arresting Ms. Ramirez which require that this case proceed to trial.  Plaintiff allots a considerable portion of her argument to the credibility issues surrounding whether she in fact recanted her refusal to take the blood test.  It should be obvious from my discussion above that this issue does not go to a material fact, and that there is no need to submit it to a factfinder.

**Municipal Liability**

Because defendants' conduct in effecting Ms. Ramirez' arrest was based on probable cause, plaintiff's claims against the City of Farmington and the City of Farmington Police Department should be dismissed.  Hinton v. City of Elwood, Kan., 997 F.2d 774, 782 (10th Cir. 1993) (municipality may not be held liable where there is no underlying constitutional violation by any of its officers). Moreover, the City of Farmington Police Department should not have been named a defendant in this action.  It is not an entity separate and apart from the City of Farmington, but rather an administrative department of the City.  See Howard v. City of Albuquerque, Civ. No. 90-1019 JC, slip op. at 2 (D.N.M. July 12, 1991) (citing numerous cases).  Now, Therefore,

---

[6] In fact, the statute limits the issuance of these search warrants to where there is probable cause that a felony was committed while under the influence, or to where death or great bodily injury to another person has occurred.

**IT IS ORDERED** that defendants' Motion for Summary Judgment [27-1] be, and hereby is, **granted** and that this cause is **dismissed with prejudice** in its entirety.

_____
UNITED STATES MAGISTRATE JUDGE